**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 30, 2017

Mr. William Frank Piper II
Law Office
1611 W. Centre Avenue
Suite 209
Portage, MI 49024

        Re: Case No. 16-1798, *Robbin Perkins v. Rock-Tenn Services, Inc.*
            Originating Case No. : 1:15-cv-00008

Dear Counsel,

   The Court issued the enclosed (Order/Opinion) today in this case.

                             Sincerely yours,

                             s/Roy G. Ford for Ms. Laura A. Jones
                             Case Manager
                             Direct Dial No. 513-564-7016

cc: Mr. Thomas Dorwin
    Mr. Brian M. Schwartz
    Mr. Richard W. Warren Jr.

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0383n.06

No. 16-1798

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 30, 2017
DEBORAH S. HUNT, Clerk

| ROBBIN PERKINS, | ) | |
|---|---|---|
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| ROCK-TENN SERVICES, INC., | ) | |
| Defendant-Appellee. | ) | |

BEFORE: DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. After resigning from Rock-Tenn Services, Inc., Robbin Perkins discovered that the male employee assigned to take over her former job responsibilities was paid much more than she had been paid. Perkins filed suit under the Equal Pay Act, 29 U.S.C. § 206(d), alleging that the pay differential was based on sex. Perkins also claimed that Rock-Tenn did not provide her with notice that she was entitled to continue her health-care benefits after her resignation, as is required under the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1166(a). The district court granted Rock-Tenn's motion for summary judgment as to both claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2010, Rock-Tenn Services hired Robbin Perkins as the shipping superintendent at a paper-production mill in Battle Creek, Michigan. The International Brotherhood of Teamsters represented Rock-Tenn's non-managerial employees under a collective bargaining

agreement (CBA) that set compensation for those employees. Shipping superintendent was a management position, however, and not subject to the CBA. Based on factors set out in Rock-Tenn's "Guide to Salaried Compensation," such as market value of skills, performance, and geographic location, Rock-Tenn hired Perkins at a salary of $70,000 a year.

As shipping superintendent, Perkins was responsible for managing the shipment schedule, tracking shipments, supervising the shipping department employees, and confirming that the correct number and type of paper rolls were loaded into the delivery trucks. As a manager, Perkins had the authority to promote, hire, discipline, and fire, but the record indicates that generally she received permission from her direct supervisor, the plant manager, before taking any of these actions.

Six months after hiring Perkins, Rock-Tenn hired Tom Shannon in January 2011 as the plant manager. In that position, Shannon was responsible for supervising the five different plant departments, including the shipping department. The relationship between Perkins and Shannon appears to have been strained. Perkins repeatedly made suggestions to Shannon about ways to improve the shipping department, specifically about how to reduce "detention costs," which are costs charged by the trucking companies for time that the delivery trucks spend at the plant waiting to be loaded, but Shannon did not implement these changes. Shannon assigned Perkins additional job responsibilities but did not increase her compensation.

In 2013, Perkins asked Shannon to provide her with a "lead," a title used to signify a union employee that assists a department superintendent. The 2009-2013 collective bargaining agreement provided:

> Lead person functions will include implementation of their supervisor's orders and the making of necessary decisions in the absence of their supervisor as these decisions pertain to the normal operations of the Company. Lead persons will have no management rights and shall have no authority to hire, fire, promote,

-2-

> discipline, distribute paychecks, nor will they be held responsible in the event there are errors in the distribution of overtime.

Shannon agreed to add a lead position to the shipping department, and Perkins and Shannon selected Gary Wood to fill the role. Wood had worked at the Battle Creek mill since 1994, first as a generalist, then in the machine department, and since 2009, in the shipping department. Upon being selected for the lead position, Wood was given an initial 12 percent pay increase, which was required by the CBA.

As lead, Wood assisted Perkins with all aspects of her job. He took over her job responsibilities on the weekends, when she was not at work. His pay rate was dictated by the CBA, and he received time-and-a-half for every overtime hour worked, as well as double pay on Sundays, holidays and for any hour worked beyond twelve hours in a row. Wood explained that while working as lead for Perkins, he occasionally was elevated to "production lead" when Perkins was on vacation or away from the mill. He received another 12 percent increase in pay for time he spent as production lead. Wood testified that the production-lead pay increase is not in the "actual contract" but that it had been negotiated between the union and management. After becoming lead, Wood generally worked over 70 hours a week, and in 2013, he earned $108,954.

Perkins resigned in February 2014, citing a "loss of confidence" in Shannon's ability to manage. At the time of her resignation, Perkins was earning $78,463 a year. After her resignation, Rock-Tenn posted the shipping superintendent position and listed the maximum salary as $70,000. In the meantime, Shannon assigned the majority of Perkins's responsibilities to Wood. Wood, however, remained an hourly union employee and thus still did not have authority to hire, fire, promote, or discipline. Rock-Tenn ultimately decided not to hire a salaried shipping superintendent to replace Perkins and, instead, decided that Wood would continue to

perform the majority of the responsibilities previously designated to the shipping superintendent. As a permanent production lead, Wood received 12 percent more—at all times—than his base pay rate as regular lead. Wood earned $113,672.54 in Social Security wages in 2014.

Eventually, Monica LeGrand was selected to be Wood's lead. As lead, she received a 12 percent pay increase and another 12 percent increase for any periods of time when she worked as the production lead, if Wood was away from the mill. Wood supervised the lead and other shipping department employees and coordinated and scheduled the shipments. Shannon was Wood's direct supervisor.

Perkins filed an action against Rock-Tenn, alleging that it paid her less than male employees in her position, in violation of several federal and state statutes, and that Rock-Tenn failed to provide her with notice of continuing health-care coverage, as required under COBRA. Rock-Tenn moved for summary judgment, which the district court granted as to all claims. Perkins appeals the district court's grant of summary judgment as to her claim that Rock-Tenn violated the Equal Pay Act, by paying Wood more money for doing equal work. She also appeals the district court's grant of summary judgment to the defendant on her COBRA claim.

## DISCUSSION

### Standard of Review

"Our standard of review of a grant of summary judgment is *de novo*; we use the same test used by the district court." *Whittlesey v. Cole*, 142 F.3d 340, 342 (6th Cir. 1998). "Summary judgment is appropriate if, after an opportunity for discovery, the moving party demonstrates that there is no genuine issue of material fact as to the existence of an element essential to the non-moving party's case and on which the non-moving party would bear the burden of proof at trial."

*Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).

**Equal Pay Act**

In an effort to address "the age-old belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it," the Equal Pay Act prohibits employers from paying an employee less than an employee of the opposite sex, if both employees are performing equal work. *Bence v. Detroit Health Corp.*, 712 F.2d. 1024, 1029 (6th Cir. 1983) (internal quotations omitted). The district court found that Perkins established a *prima facie* case of wage discrimination, but determined that Rock-Tenn had successfully established an affirmative defense. Additionally, the district court found that Perkins failed to offer any evidence that Rock-Tenn's affirmative defense was pretexual.

    a. **Perkins's *Prima Facie* Case**

To make a *prima facie* case of wage discrimination under the Equal Pay Act, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "Equal work" does not necessarily mean that two jobs must be identical or share a title; rather, "[i]n determining whether a comparator is appropriate for the purposes of an [Equal Pay Act] claim,

our focus is on actual job requirements and duties, rather than job classifications or titles." *Id.* at 362. "The jobs to which the equal pay standard is applicable are jobs requiring equal skill in their performance. . . . Skill includes consideration of such factors as experience, training, education, and ability. It must be measured in terms of the performance requirements of the job." 29 C.F.R. § 1620.15(a). "Whether a job is substantially equal for purposes of the [Equal Pay Act] is determined on a case-by-case basis and 'resolved by an overall comparison of the work, not its individual segments.'" *Beck-Wilson*, 441 F.3d at 359. (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)).

The district court found that the work performed by Perkins in her role as "shipping superintendent" and the work performed by Wood as "production lead" after Perkins's resignation to be equal work for purposes of the statute. We agree. In explaining the responsibilities associated with each of their respective roles, Perkins and Wood described the same primary tasks: managing the shipping floor, supervising the shippers, coordinating with customer service, and creating the shipment schedule. Wood explained that when he worked under Perkins as a "lead," he helped her perform the shipping-superintendent duties, and that he performed these duties on a full-time basis as "production lead" after Perkins resigned. After Perkins left, Rock-Tenn did not hire a new "shipping superintendent" because Wood was covering the main job responsibilities. "[E]vidence that the positions being compared are fungible can support a prima facie case under the [Equal Protection Act]." *Beck-Wilson*, 441 F.3d at 360. Both Perkins, as shipping superintendent, and Wood, as production lead, were responsible for supervising the shipping department employees. Both worked with a union employee in the "lead" position. Both were supervised directly by Shannon. In short, the record contains sufficient evidence such that a reasonable jury could conclude that the positions of

No. 16-1798
*Perkins v. Rock-Tenn Services, Inc.*

"shipping superintendent" and "production lead" were fungible under the circumstances in this case and, therefore, that they required "equal work" under the Equal Pay Act.

### b. Rock-Tenn's Affirmative Defense

"Once the plaintiff establishes a prima facie case, the defendant must 'prove' that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). Unlike the Title VII framework, in which defendants only have to *assert* a legitimate, non-discriminatory reason for the treatment at issue before the burden shifts back to the plaintiff to show pretext, under the Equal Pay Act, the defendant bears the burden of proof in *establishing* an affirmative defense. *Beck-Wilson*, 441 F.3d at 360. "Thus the district court's grant of [a defendant's] motion for summary judgment can be upheld only if the record shows that [a defendant] established the defense so clearly that no rational jury could have found to the contrary." *Id.* at 365 (internal quotations omitted).

The "factor other than sex" defense does not encompass all other factors—at a minimum, it must be a factor that was adopted for a legitimate business reason. *E.E.O.C. v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988). "[T]he burden of proving that a factor other than sex is the basis for a wage differential is a heavy one." *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997). Nevertheless, the district court found that Rock-Tenn successfully proved that the wage differential at issue was justified under the Equal Pay Act. The district court ruled that "[i]t cannot be disputed that paying one employee more than another based on a

different measure of compensation (hours worked versus an annual salary) in accordance with an agreement with a union is a legitimate business reason."

The district court was correct in finding that Rock-Tenn met its burden of proving that the wage differential was justified based on factors other than sex by establishing that any pay differential between Perkins and Wood was based on experience, the existence of an hourly position, wage earnings history, and the fact that Wood's pay was set by a collective bargaining agreement.

Our circuit has previously found that a "[a] wage differential based on . . . experience is a factor other than sex for purposes of the Equal Pay Act." *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826 (2011). Additionally, "[c]onsideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity." *Id.* There are no issues of fact regarding Wood's lengthy tenure at Rock-Tenn or his salary prior to Perkins's resignation. Even before we consider Wood's union membership, the fact that Wood had worked at Rock-Tenn for 20 years, and the fact that his salary at the time of Perkins's resignation was over $100,000, are both legitimate factors other than sex that justify the wage differential.

As the district court emphasized, however, the most persuasive justification for the wage-differential between Wood and Perkins is the fact that Wood was a union employee and Perkins was not. There is no question that the decisions made as a result of negotiations between union and employer are made for legitimate business purposes; thus, a wage differential resulting from status as a union member constitutes an acceptable "factor other than sex" for purposes of the Equal Pay Act. As a union employee, Wood was compensated on an hourly basis, rather than a set salary. Wood, and all union employees, received time-and-a-half pay for every hour worked

in excess of 40 hours, and double time on Sundays and holidays. Both parties agree that when Wood was assigned to the lead position under Perkins, the collective bargaining agreement required that he receive a 12 percent pay increase. Even before Wood was elevated to full-time "production lead," he earned significantly more than Perkins, largely due to the amount of money he was able to earn through overtime and weekend work.

Perkins argues on appeal that Rock-Tenn failed to meet its burden of proof because it did not sufficiently prove that sex played no role in the pay differential. Although Rock-Tenn's decision to convert Perkins's former position to a union position clearly did benefit Wood, the record does not contain evidence that Rock-Tenn's decision to convert the position was based on Wood's sex. If Perkins had evidence that Rock-Tenn hired only men for union positions, while relegating female applicants to what turned out to be a lower-paid management track, this shipping superintendent job reassignment would be suspect. However, the record contains no such evidence. In fact, there is evidence in the record that Rock-Tenn assigned a woman, Monica LeGrand, to work as lead under Wood. LeGrand received a 12 percent pay increase as lead, and an additional 12 percent increase for any time she spent filling in for Wood—the same pay increases Wood received while working under Perkins. Based on the evidence of Wood's experience, tenure, prior salary, and union membership, and because the record does not contain any evidence that the job reclassification was based on discriminatory animus, the district court concluded correctly that Rock-Tenn successfully established an affirmative defense.

   c. **Evidence of Pretext**

In an Equal Pay Act claim, the "plaintiff bears the burden of *producing* evidence of pretext solely where a reasonable jury viewing the defendant's evidence could find only for the defendant; the plaintiff, however, never bears the burden of *persuasion* regarding the affirmative

defenses." *Buntin*, 134 F.3d at 799 n.7 (emphasis in original). The district court found that Perkins failed to offer evidence of pretext. Perkins puts forth several theories in an attempt to prove that the pay differential was based on sex, rather than Wood's experience, former salary, or union membership. None, however, hold water.

First, Perkins points out that in converting the shipping superintendent position from a salaried management position to an hourly union position, Rock-Tenn had to pay Wood over $35,000 more than what Perkins had earned. Perkins argues that this decision is "economically irrational," "unusual," and "counter-intuitive." She further speculates that "employers usually resist the expanding of unionization." Perkins believes that a reasonable jury could infer, based on this fact, that Rock-Tenn's decision to convert the position to a union position was made based on sex. Although proving an affirmative defense is a heavy burden, this argument is insufficient to disprove Rock-Tenn's explanation for the pay differential.

Second, Perkins points out that the additional 12-percent pay increase given to lead employees who step in as "production leads" is not referenced specifically in the collective bargaining agreement. She contends that the defendant generously volunteered to "sweeten the deal" for Wood, by giving him a permanent 12-percent increase when he became a full-time production lead. Based on the record, however, it appears to be standard procedure for the company to increase a union lead's pay by 12 percent for time spent filling in as "production lead." The district court found that Perkins requested that Wood receive a 12-percent increase in pay for the time he spent filling in for her while she was away from the mill. Similarly, LeGrand received the same pay increase when she became lead, and a further 12-percent pay increase for periods of time she covered for Wood. Additionally, both Shannon and Wood, who is the union

vice-president, agreed that the additional 12-percent pay increase was negotiated through the collective-bargaining process.

Finally, Perkins points out that Shannon ignored all of the cost-saving changes she suggested but agreed to make the same changes when suggested by Wood. Additionally, she explains that she was not given a raise after Shannon increased her responsibilities as shipping superintendent. Perkins argues that the district court did not consider these facts, which, in her opinion, are compelling evidence of sexism. However, Perkins fails to connect adequately either of these alleged incidents to Rock-Tenn's decision to assign her duties to Wood after her resignation or Rock-Tenn's decision to convert the shipping superintendent position into a "production lead" position to be filled by a union employee. As a result, these arguments are unpersuasive and fail to show that Rock-Tenn's affirmative defense regarding the pay differential was pretextual. Because Perkins failed to produce evidence on which a reasonable jury could determine that Rock-Tenn's affirmative defense was pretextual, the district court was correct in granting Rock-Tenn's motion for summary judgment as to this claim.

**COBRA Notice**

Next, Perkins asks us to review the district court's dismissal of her COBRA-violation claim. Perkins's complaint alleged that Rock-Tenn failed to comply with COBRA because it did not send her a notice that she was entitled to continue her health-insurance benefits. Under COBRA, employers are required to notify employees of their right to continue health-insurance coverage after a "qualifying event." 29 U.S.C. § 1166(a); 29 U.S.C. § 1162. Termination of employment is a qualifying event. 29 U.S.C. § 1163(2). The district court granted Rock-Tenn's motion for summary judgment as to this claim. We review a grant of summary judgment *de novo*. *Whittlesey*, 142 F.3d at 342. Here, however, Perkins's challenge primarily concerns the

district court's consideration of an affidavit given in support of Rock-Tenn's motion for summary judgment. We generally review a district court's evidentiary rulings for an abuse of discretion. *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). We will reverse a district court's evidentiary decisions only when we find that such abuse of discretion has caused more than harmless error. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).

In its motion for summary judgment, Rock-Tenn included an affidavit from Karol Fecteau, Rock-Tenn's human resources manager, explaining that a third-party vendor, Aon Hewitt, was responsible for sending COBRA notices on Rock-Tenn's behalf. Rock-Tenn also attached screenshots from Aon Hewitt's computer database, indicating that COBRA notices had been sent to Perkins on March 7, 2014, and February 17, 2015. In her affidavit, Fecteau averred that the screen shots confirm that the notices had been sent to Perkins. Perkins argued that Fecteau's affidavit and the computer screenshots were inadmissible hearsay and, in response, Rock-Tenn submitted a *second* affidavit along with its reply brief in support of the motion for summary judgment. The second affidavit is from Clyde Watson, a delivery manager directly employed by Aon Hewitt.

### a. Unfair Prejudice

First, Perkins argues that she was unfairly prejudiced by the district court's consideration of the Watson affidavit submitted with Rock-Tenn's reply brief, because she did not have an opportunity to respond. We have previously held that "[w]hile the Rules are silent as to timing matters with reply affidavits, precedent establishes that, in the face of new evidence, the court should permit the opposing party an opportunity to respond." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir. 2002). However, Rock-Tenn filed its reply brief on January 22, 2016, more than four months before the district court ruled on the motion. Seemingly, Perkins had

ample opportunity to request that the court allow her to respond to this new evidence, had she desired.  *See id.*  (finding that a reply affidavit filed one week before a hearing still provided the opponent sufficient time to respond).  There is no evidence that Perkins made any effort to respond, despite having sufficient time to do so and, therefore, this argument fails to establish that the district court abused its discretion in admitting the Watson affidavit.

### b. Hearsay

Second, Perkins contends that the district court erred in admitting the Watson affidavit because the affidavit contains inadmissible hearsay.  Hearsay is a statement, other than one made by the declarant while testifying at the trial or the hearing, offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Hearsay evidence cannot be considered on summary judgment. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

The district court held that the Fecteau affidavit and the accompanying screen shots of Aon Hewitt's database were inadmissible as hearsay, because the screenshot was "merely commentary and a picture from an unknown source purporting to establish the truth of the matter asserted" and because Fecteau did not assert that the data depicted by the screenshot was a record kept in the ordinary course of business.  The district court determined that the evidence did not fall under any of the hearsay exceptions and, therefore, that "[Fecteau's] affidavit and its exhibits are not sufficient in themselves to establish that [the] Defendant complied with COBRA."

The district court gave much greater credence to the Watson affidavit.  In that affidavit, Watson asserted that he had worked for Aon Hewitt since 1998 and as a "delivery manager" since April 2015.  As delivery manager, Watson was responsible for ensuring that COBRA notices were sent to departing Rock-Tenn employees, as directed by Rock-Tenn.  Watson's affidavit explained that Aon Hewitt "maintains certain records in the ordinary course of business

on behalf of Rock-Tenn." He further stated, "My review of Aon Hewitt's computer system demonstrates that COBRA notifications were sent by regular U.S. mail to Ms. Perkins twice: first on March 7, 2014 and again on February 15, 2015."

Watson does not claim that he personally sent the notices to Perkins or documented such mailings in the computer system—nor could he have, because he did not take on the role as delivery manager until after Aon Hewitt mailed Perkins her notices. Watson stated only that he reviewed the company's computer data—presumably input by another Aon Hewitt employee—and Rock-Tenn offered this statement for the truth of the matter asserted. This statement is also hearsay and is admissible only if it satisfies one of the hearsay exceptions.

Although the district court did not articulate the relevant applicable hearsay exception, we conclude that Watson's affidavit, and the Aon Hewitt computer records referenced therein, are admissible under the business record exception. Rule 803(6) of the Federal Rules of Evidence permits records of regularly conducted business activity to be admitted into evidence if the records: (1) "were created in the course of a regularly conducted business activity," (2) "were kept in the regular course of that business," (3) "resulted from a regular practice of the business to create such documents," and (4) "were created by a person with knowledge of the transaction or from information transmitted by a person with knowledge." *United States v. Collins*, 799 F.3d 554, 582 (6th Cir. 2015) (internal quotations omitted).

Fulfillment of the business record exception conditions must be shown through the testimony of the custodian, a qualified witness, or through a certification. *Id.* at 583. "[I]t is not necessary that the person laying the foundation for the introduction of the business record to have personal knowledge of their preparation." *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999). "All that is required of the witness is that he or she be familiar with the

record-keeping procedures of the organization." *Id.* As a long-time Aon Hewitt employee, and the current delivery manager of COBRA notices, Watson was qualified to lay a foundation for the introduction of Aon Hewitt's computer records.

Watson's affidavit explains that Aon Hewitt provides record-keeping services for Rock-Tenn, provides COBRA notifications to departing Rock-Tenn employees, and maintains certain records in the ordinary course of business on behalf of Rock-Tenn. Watson specifies that Aon Hewitt does not retain hard copies of COBRA notices, but it does retain computer records. It was not an abuse of discretion for the district court to admit this hearsay evidence under the business record exception.

In consideration of Watson's affidavit and Aon Hewitt's computer records, there is no issue of material fact that, through a third-party vendor, Rock-Tenn sent Perkins written notice of her option to continue her health insurance pursuant to COBRA. *See also* 29 C.F.R. § 2590.606-1; 29 C.F.R § 2520.104(b)-1 (explaining that mail is a permissible way to deliver notice).

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.